AYRES, Judge.
This is an action for damages for breach of a contract and for the cancellation of a labor and material lien filed against the property of the plaintiff. The named defendant, in reconvention, resisted the cancellation of the lien, prayed for its recognition and enforcement, and for judgment against plaintiff for $1,450, representing a balance allegedly due him by plaintiff upon a contract for the painting of plaintiff’s residence erected in Bayou View Place Subdivision in Ouachita Parish, Louisiana. From a judgment in plaintiff’s favor, directing the erasure of the aforesaid lien from the records of Ouachita Parish, Louisiana, and condemning defendant to pay plaintiff $100 for the breach of the aforesaid contract, defendant appealed.
Under specifications and plans prepared by one Paul F. Stewart, an architect, plaintiff entered into a verbal contract with one Vincent Marsala, a general contractor, on a cost-plus basis for the construction, under the architect’s supervision, of a residence on a plot of land owned by him in the aforesaid subdivision. In the execution of the general contract, upon the approval of the architect, the general contractor let the painting of the residence to the defendant, Letterman, for the price of $4,450. Under the general conditions of the contract, to which the defendant subscribed, it was provided that, should the contractor neglect to prosecute the work properly or fail to perform any provision of the contract, the owner, after three (3) days’ written notice to the contractor, might, without prejudice to any other remedy he may have, make good such deficiencies and deduct the cost thereof from the payment then, or thereafter, due the contractor, on the con *549 dition that both such action and the amount charged be approved by the architect. It was further provided that should the contractor refuse or fail to substantially comply with any provision of the contract or to disregard instructions of the architect, the owner then, upon certificate of the architect, might, without prejudice to any other right or remedy, and, after giving the contractor seven (7) days’ written notice, terminate the employment of the contractor and take possession of the premises and of all the materials, tools and appliances thereon and finish the work by whatever method deemed by him expedient. On the occurrence of such an event, it was provided that the contractor would not be entitled to receive any further payment until the work was finished, provided that, where any unpaid balance of the contract exceeded the expense of finishing the work, such excess would be paid to the contractor; but should such expense exceed such unpaid balance, the contractor would pay the owner the difference.
The record establishes that during the early part of 1957, the defendant began work under the aforesaid contract. The work was somewhat irregularly pursued and delays were encountered, to which plaintiff registered serious objections. Under date of June 8, 1957, the architect forwarded a preliminary check list made on a preliminary inspection by the general contractor, the plaintiff as owner, and the architect as supervisor, in which communication the architect called upon the defendant to take care of these items as soon as practicable, and additionally pointed out that the paint used did not equal that specified in the specifications. The check list included 65 items directed to the defendant’s attention for remedy or completion. Justification of 23 items of this list was conceded in defendant’s brief as chargeable to defendant.
The work not having been timely undertaken or satisfactorily performed, the architect addressed another communication to the defendant July 11, 1957, in which attention was called to general conditions of the specifications and defendant was requested to again commence said work within three (3) days thereafter and to complete the same within one week or not later than noon July 23, 1957, non-conformance of which would be considered a breach of contract, authorizing the termination of defendant’s employment and the completion of the work by the owner. In this notice particular attention was noted of the necessity of the filling of nail holes in the plywood paneling in various areas, the finishing of all walls, including closet walls, and the finishing of all woodwork, including trim and doors, in accordance with the specifications, so as to meet the approval of the architect. In due course, the work not having been completed by the defendant, his services were dispensed with and its completion was undertaken by the owner, who, pursuant to bids, contracted for its completion for the price and sum of $1,550. This action was followed by the filing of the aforesaid lien by the defendant, whereupon plaintiff instituted this action for its cancellation and erasure and the recovery of the $100 expended to complete the work in excess of defendant’s contract price.
The substance of defendant’s resistance to plaintiff’s demands is that plaintiff did not sustain his burden of proof in establishing that defendant failed to do his work in accordance with the plans and specifications or in establishing the price for the completion of said contract. The issues are entirely factual and were resolved by the district court against defendant. We find no merit in defendant’s contentions. Sher-win-Williams paint was designated in the specifications to be used. Contrary to such specifications, this paint was not used, nor was its equivalent used throughout the job but a foreign paint of an unknown quality, and proving to be of an inferior grade, was used. This was the course pursued by defendant, without submitting the brand to the architect for approval. Additionally, the architect found that the *550 painters had not properly prepared the surfaces for painting or the paint for the application of subsequent coats by proper sanding so as to prevent the grain in the wood from showing through the paint. The occurrence of this condition he attributed to that cause or to a thickness of the paint used. The architect found defective work in the enamel coating of the cabinets, shelves and enamel vanities and in the finishing of the gypsum boards of the closets. These walls were not of a fine sand-finished texture, as specified, but were smoothed-finished. The joints of the gypsum, or sheetrock, hoards were not properly taped and showed through the finished work. Some of the joints had become disjointed. Nail holes in certain areas of the building were not caulked or filled and, consequently, showed through the finished paint work. The work on the ceilings, particularly in the living room and guest bedroom, was specifically pointed out by the architect as not complying with the specifications. Where colors joined, there was no clear demarcation between them and the colors overlapped. The architect was of the opinion that the work presented a rough finish and was lacking in workmanship in a residence of the character being erected by plaintiff and lacking in materials as specified in the contract. In this connection, it may be stated that the defendant admitted he substituted and tried out new brands of paint, notwithstanding, according to the specifications, he was to use a particular manufacturer’s paint. While the testimony of the architect, an expert, who drew the plans and prepared the specifications and supervised the work, is entitled to great weight, it may be stated that he is corroborated by a preponderance of lay testimony, particularly by that of the owner and of the general contractor, as well as other witnesses appearing on behalf of both plaintiff and defendant.
Neither do we find any merit in defendant’s contention that plaintiff failed to sustain his burden in establishing the price required for the completion of the work after defendant’s default. The procedure followed by the general contractor in calling for bids for the completion of the work and the awarding of the contract to the lowest bidder was found by the trial court to be fair and equitable. In this conclusion we concur, as well as in his conclusion that the work contracted by defendant was not done according to specifications.
The judgment appealed, appearing eminently correct, is affirmed at appellant’s cost.
Affirmed.